

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-1995

# In Re: Stanton L. Segal

Precedential or Non-Precedential:

Docket 94-1222

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"In Re: Stanton L. Segal" (1995). *1995 Decisions.* Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 94-1222

———————

IN RE:  STANTON L. SEGAL,

                    Debtor

    ELIZABETH CROWE SEGAL,

                    Debtor

SANTA FE MEDICAL SERVICES, INC.,

                Appellant,

            vs.

STANTON L. SEGAL; ELIZABETH CROWE SEGAL,

                Appellees,

CHRISTINE C. SHUBERT, ESQ.,

                    Trustee

FREDERIC BAKER, ESQ.,

                    Trustee

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 93-cv-06460)

———————

ARGUED JULY 20, 1994

BEFORE:  SCIRICA, LEWIS and SEITZ, Circuit Judges.

(Filed  June 16 , 1995)

_____

Kenneth F. Carobus (ARGUED)
Morris, Adelman, Dickman & Carpel
1920 Chestnut Street, Suite 400
Post Office Box 30477
Philadelphia, PA  19103-8477

          Attorney for Appellant


Andrew N. Schwartz
David C. Silverman (ARGUED)
Shaiman, Phelan & Schwartz
1411 Walnut Street, Suite 1015
Philadelphia, PA  19102

          Attorneys for Appellees

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

          This appeal requires us to determine whether loans made

pursuant to the terms of an employment contract, and which are

used to repay educational debt, are non-dischargeable within the

meaning of 11 U.S.C. § 523(a)(8).  The Bankruptcy Court concluded

that they are dischargeable.  Because we do not believe that such

loans are educational in nature and are therefore not subject to

the non-dischargeability exception set forth in section

523(a)(8), we will affirm.

                              I.

          On June 20, 1978, Appellee Dr. Elizabeth Crowe Segal

("Dr. Crowe") signed a Scholarship Program Contract ("Scholarship

Contract") with the National Health Service Corps ("NHSC"), which allowed her to receive educational benefits from, and caused her to incur an obligation to, the NHSC.[1] Under the terms of the contract, Dr. Crowe received medical school tuition support and various stipends during the course of her studies, which she completed in 1982. Also in 1982, Dr. Crowe married Appellee Dr. Stanton Segal ("Dr. Segal") who was at no time a party to, nor obligated under, the Scholarship Contract.[2]

Pursuant to the Scholarship Contract, Dr. Crowe became obligated, upon her graduation from medical school, to provide medical services for approximately four years at a location designated by the NHSC. She apparently received a deferment to begin service immediately after completing a residency, and she began practicing at an approved NHSC site in Jasper, Florida, in July 1986. Dr. Crowe worked at the Jasper site until April 1989, thereby satisfying all but approximately 19 months of her four-year obligation to NHSC. At that time, Dr. Crowe elected to satisfy the remaining obligation under the Scholarship Program by way of repayment. (The Scholarship Contract provided that in lieu of services, a cash payment could be made to satisfy the obligation. See 42 U.S.C. § 254o.) The means by which Dr. Crowe

---

[1]. Section 751 of the Public Health Service Act (42 U.S.C. § 294t) established the National Health Service Corps Scholarship Program and authorized the Secretary of Health, Education and Welfare to provide applicants selected to be participants in the program with scholarship awards.

[2]. For ease of reference and where appropriate, we will occasionally refer to Dr. Crowe and Dr. Segal as the "debtors."

obtained the funds to satisfy her obligation to the NHSC, detailed below, give rise to the controversy over the scope of section 523(a)(8).

During the time that Dr. Crowe was practicing in Jasper, Dr. Segal became affiliated with Lake Shore Hospital in Lake City, Florida.  Lake Shore Hospital is owned by Santa Fe HealthCare, Inc. ("HealthCare"), which also owns Appellant Santa Fe Medical Services ("Santa Fe"), a Gainesville, Florida, nonprofit corporation.  HealthCare was recruiting physicians to provide Obstetrics and Gynecological ("OB\GYN") services in the area surrounding Lake Shore Hospital.  Dr. Crowe was both willing and able to provide these medical services, but she first had to satisfy her obligation to the NHSC.  After some negotiation, Dr. Crowe and Santa Fe, by and through its principal, HealthCare, entered into a Physician Employment Contract ("Employment Contract"), the terms of which included a loan from Santa Fe to Dr. Crowe.  Section 7 of the Employment Contract provides, in pertinent part:

> (a)  In addition to [Dr. Crowe's] salary, SantaFe shall loan [Dr. Crowe] up to Two Hundred Thousand dollars ($200,000) upon the execution of this Agreement by the Physician and upon the execution of the attached promissory note by the Physician and her husband.  Said amount shall be used solely and exclusively to satisfy the Physician's obligation to the United States National Health Service.

The promissory note referred to in Section 7 of the Employment Contract states at the outset:

> For value received, we Betsy Crowe, M.D., and Stanton Segal, M.D. (collectively referred to

as "the Maker") promise to pay to the order
of SantaFe Medical Services, Inc. ("Payee")
the sum of Two Hundred Thousand dollars
($200,000.00) in the following manner:  in
thirty-six equal monthly payments of then
outstanding principal each, beginning May 15,
1991, and due on the first day of each month
thereafter until the entire amount is paid,
with interest on the unpaid balance at the
prime rate . . . .

In accordance with the provisions of the Employment
Contract, Santa Fe loaned the Debtors $182,619.17, an amount
which corresponds to the precise figure owed by Dr. Crowe to the
NHSC.[3]  On October 31, 1989, Santa Fe issued a check for that
amount made payable to the Debtors and the Health Resources and
Services Administration, a division of the then Department of
Health, Education, and Welfare.[4]  The Debtors do not dispute that
they received this amount, nor is there any suggestion that the
funds were not paid to the NHSC.

## II.

It is likewise undisputed that by April 29, 1992, the
date upon which Drs. Crowe and Segal filed a petition for
bankruptcy relief under Chapter 7, they had repaid only $5,000 to
Santa Fe.

Santa Fe filed a Complaint to Determine
Dischargeability in the United States Bankruptcy Court for the

---

[3]. Although the promissory note indicates that the amount owed
was $200,000, it is undisputed that the actual amount of the debt
was $182,619.17.

[4]. The Department of Health, Education and Welfare was
redesignated the Department of Health and Human Services in 1979.
Pub. L. 96-88, Title V, § 509(b), Oct. 17, 1979, 93 Stat. 695.

Eastern District of Pennsylvania seeking a declaration that the loan it made to Dr. Crowe and Dr. Segal in 1989 was non-dischargeable under section 523(a)(8).  After discovery was completed, the Debtors filed a motion for summary judgment requesting a dismissal of the adversary action with respect to Dr. Segal because (1) he was not the student-debtor and had, therefore, received no educational benefits and (2) the loan itself was not the type of loan covered by section 523(a)(8).  Upon the court's suggestion that a determination of the second issue in the Debtors' favor, i.e., that the loan was not an educational loan, would resolve the claim against Dr. Crowe as well, the motion was amended and brought on behalf of both debtors.  Prior to the court's ruling on the motion and Santa Fe's cross-motion which followed, we decided In re Pelkowski, 990 F.2d 737 (3d Cir. 1993), wherein we definitively resolved the issue whether a non-student co-obligor may discharge a debt under section 523(a)(8), without proving one of the statutory exceptions, in favor of the creditor.[5]

---

[5].    There are two statutory exceptions to the non-dischargeability of a student loan which remain available to both the student and non-student debtor, i.e., that the loan came due more than seven years before the bankruptcy filing, 11 U.S.C. § 523(a)(8)(A), or that non-discharge of the debt would create "undue hardship," 11 U.S.C § 523(a)(8)(B).  In re Pelkowski, 990 F.2d 737, 742 (3d Cir. 1993).  The Debtors, however, do not assert the applicability of either exception in this proceeding.

The bankruptcy court found the debt dischargeable.[6] Santa Fe appealed and the United States District Court for the Eastern District of Pennsylvania affirmed. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 158(d).

Our review of the district court's decision "effectively amounts to review of the bankruptcy court's opinion in the first instance." In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir. 1992), quoting In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989). Insofar as this case turns on the interpretation of a provision of the Bankruptcy Code, our review is plenary. Pelkowski, 990 F.2d at 739. We review de novo the bankruptcy court's order granting summary judgment. In re Pilcher, 149 B.R. 595 (9th BAP 1993).

### III.

The question before us is one of statutory construction. Accordingly, we begin with the familiar canon that the starting point for interpreting a statute is its plain language, Mansell v. Mansell, 490 U.S. 581, 588 (1989), although

---

[6]. The bankruptcy court elected not to determine the dischargeability of the debt as to Dr. Segal because its determination that the Santa Fe loan did not represent an educational debt within in the meaning of section 523(a)(8) proved to be dispositive. Appellees argue that the circumstances of this case, i.e., the nature of the loan and the timing of Dr. Segal's co-execution, distinguish it from Pelkowski and that a remand for further argument on the issue of dischargeability with respect to Dr. Segal as co-obligor would be proper in the event we decide section 523(a)(8) does not apply to the loan. Because we will affirm the district court's determination that the loan is dischargeable under section 523(a)(8), this issue is moot.

we hasten to note that in certain instances "plain language" can be an oxymoron. We have previously determined that where "the terms of a statute [are] unambiguous, judicial inquiry is complete except in rare circumstances." Taylor v. Freeland & Kronz, 938 F.2d 420, 424 (3d Cir. 1991), aff'd, 503 U.S. 638 (1992), quoting Demarest v. Manspeaker, 498 U.S. 184, 190 (1991). Such circumstances are present only in the "rare" case where the "literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters[,]" id., quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989), or where the result would be "so bizarre that Congress 'could not have intended' it." Id., quoting Demarest, 498 U.S. at 191.

Title 11 of the United States Code, at section 523(a)(8), provides:

> (a)  A discharge under section 727, 1141 or 1128(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt --

> \* \* \* \*

> (8)  for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . .

11 U.S.C. § 523(a)(8) (1990).

Despite our recent conclusion that the language of section 523(a)(8) was unambiguous and that resort to legislative

history was, therefore, unnecessary, see Pelkowski, 990 F.2d at 741-42, an analysis of the issues presented in this case cannot avoid some discussion of the evolution of section 523(a)(8).

IV.

The Bankruptcy Code was drafted to provide a discharge procedure that enables insolvent Debtors to reorder their affairs and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Grogan v. Garner, 498 U.S. 279, 286 (1991), quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). But Congress elected to exclude certain obligations from the general policy of discharge where the public policy at issue outweighs the debtors need for a fresh start. See Pelkowski, 990 F.2d at 744-45; In re Merchant, 958 F.2d 738, 740 (6th Cir. 1992). Among the exceptions, which are to be narrowly construed against the creditor and in favor of the debtor, Pelkowski, 990 F.2d at 744, is the proviso in section 523(a)(8) that educational loans be non-dischargeable.

When originally enacted in 1978, section 523(a)(8) referred only to obligations "to a governmental unit, or a nonprofit institution of higher education for an educational loan." Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 (1978). Clearly under that version of the statute, the debt to Santa Fe would be dischargeable, regardless of its classification as an educational loan. Santa Fe is neither a governmental unit nor a nonprofit institution of higher education.

The subsection was amended in 1979 to include "educational loan[s] made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or a nonprofit institution of higher education."  Act of August 14, 1979, Pub. L. No. 96-56, § 3(1), 93 Stat. 387 (1979) (amending 11 U.S.C. § 523(a)(8) (Supp. 1979)).  The debt at issue in this case still would have been dischargeable, as the loan by Santa Fe was not made, insured or guaranteed by a governmental entity.

Section 523(a)(8) was again expanded by section 454(a)(2) of the Bankruptcy Amendment Act of 1984, wherein the clause "of higher education" was deleted to eliminate the inference that the section applied only to nonprofit institutions associated with higher education.  Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, Title III, § 454(a)(2), 98 Stat. 333 (Supp. 1984) (amending 11 U.S.C. § 523(a)(8) (1982)).  As a result of the 1979 and 1984 amendments, educational loans made by commercial, for-profit institutions were non-dischargeable if they were insured or guaranteed by a governmental entity, or if the loans were made pursuant to an educational lending program involving a nonprofit institution.  See In re Merchant, 958 F.2d 738 (6th Cir. 1992) (loan made by commercial bank was assigned to a nonprofit university pursuant to an agreement by the university to purchase all defaulted student loans); In re Pilcher, 149 B.R. 595 (9th B.A.P. 1993) (nonprofit entities, while not involved in the debtor's particular loan, were involved in the program by which

the loan was made).  Likewise, educational loans made by nonprofit institutions became dischargeable if they were made as part of an educational loan program.  In re Roberts, 149 B.R. 547 (C.D. Ill. 1993) (educational loan by a nonprofit credit union pursuant to an established educational loan program held to be non-dischargeable).

Subsection 523(a)(8) was yet again expanded by the Crime Control Act of 1990.[7]  The revised statute made non-dischargeable educational benefits and overpayments as well as educational loans, and increased from five to seven years the time interval in section 523(a)(8).  Most relevant to this case, however, was the addition of language which prohibited the discharge of "an obligation to repay funds received as an educational benefit, scholarship, or stipend."  Crime Control Act of 1990, Pub. L. No. 101-647, § 3631(a), 104 Stat. 4865 (1990) (amending 11 U.S.C. § 523(a)(8) (1984)).  As discussed below, Santa Fe suggests that the debt here represents such an obligation.

---

[7].    The effective date of these amendments was 180 days from November 29, 1990, the date of enactment.  Crime Control Act of 1990, Pub. L. No. 101-647, §§ 3621, 3631, 104 Stat. 4789, 4964-4965, 4966 (1990).  Because this case was filed in April 1992, the amendments are applicable.

V.

Santa Fe raises two contentions in its effort to persuade us that the Debtors' loan obligation is non-dischargeable under section 523(a)(8).

A.

Santa Fe initially claims that the obligation represents a debt for an "educational benefit overpayment or loan . . . made under any program funded in whole or in part by a governmental unit or nonprofit institution," focussing almost exclusively on whether the loan to Dr. Crowe in 1989 was made "under any program."

For this argument to prevail, Santa Fe would first have to establish that the loan to Dr. Crowe was for "educational purposes." In re Shipman, 33 B.R. 80 (Bankr. W.D. Mo. 1983). But even if we were to assume, as the bankruptcy court did, that the loan from Santa Fe to Dr. Crowe was an educational loan, our analysis would not end there. Under both the former and present versions of section 523(a)(8), it is insufficient for purposes of establishing non-dischargeability that a nonprofit institution make an educational loan; instead, the loan must also have been made pursuant to some program. See Pub. L. Nos. 96-56, § 3(1), 93 Stat. 387 (1979); 98-353, § 454(a)(2), 98 Stat. 333 (Supp. 1984); and 101-647, § 3631(a), 104 Stat. 4865 (1990). Although Santa Fe now claims that it and the Debtors created a program that was carefully outlined in the Employment Contract and the promissory note, that is not enough, for the record is devoid of evidence that the loan was made under any program funded in whole

or in part by either Santa Fe (a nonprofit institution) or a governmental entity. Santa Fe did not make a practice of buying out student debt to obtain employees, nor did it have procedures in place for making such arrangements. As far as we can tell, this was a unique, unprecedented arrangement created specifically to facilitate the acquisition of Dr. Crowe as a staff physician.

Santa Fe argues alternatively that educational benefits and loans need not be made pursuant to a program to be non-dischargeable under section 523(a)(8). In support of its argument, Santa Fe relies upon In re Najafi, 154 B.R. 185 (Bankr. E.D. Pa. 1993), wherein the court concluded that an obligation for an educational benefit, although not made pursuant to a program was, "at least to some extent," within the scope of section 523(a)(8) because the debtor received an "educational benefit" which he failed to pay for. Najafi, 154 B.R. at 190. The Najafi court held non-dischargeable a former student's obligation to Cabrini College in Radnor, Pennsylvania, despite the fact that the college "was not adhering to its normal policies" when it allowed the debtor to register and attend classes without first paying his tuition in full. The court determined that it was "fair . . . to decide the debtor's liability to Cabrini on an equitable basis rather than by strictly applying the policies set forth in Cabrini's catalogue." Id. at 191.

In Najafi, however, the court first determined that the advance of credit constituted an "educational loan." Although the court later noted that the college deviated from its normal

practice in admitting Najafi without advance payment, the question was not raised whether the loan constituted a part of the school's overall financial aid program. In the present case, there clearly was no educational loan "program"; rather there was the single loan made to Dr. Crowe. To the extent that Najafi could be interpreted as not requiring a "program," we reject its reasoning as inconsistent with the statute.

B.

Santa Fe's principal contention focusses on the 1990 amendment to section 523(a)(8), which rendered non-dischargeable an "obligation to repay funds received as an educational benefit, scholarship, or stipend." Implicit in Santa Fe's argument is the assumption that any lender -- commercial or nonprofit -- which provides funds which, in turn, are used to repay an educational loan obligation, a fortiori, has provided "funds received as an educational benefit . . . ." This argument must fail, however, because as we have already noted, the only educational benefits or stipends provided to Dr. Crowe were provided by the NHSC and not by Santa Fe.

Moreover, as the bankruptcy court correctly noted, Santa Fe's interpretation of section 523(a)(8) is overly broad. Under its interpretation, if Dr. Crowe had repaid the NHSC from a combination of her savings and a personal or unsecured commercial loan (e.g., a credit card cash advance), the personal or commercial loan would be non-dischargeable under the 1990 amendment. But the language of the subsection simply does not support the proffered construction. Santa Fe might stand on

firmer ground if, for instance, section 523(a)(8) referred to "an obligation to repay funds received as or used to repay an educational benefit, scholarship, or stipend."  Clearly, though, Congress did not enact such a provision, and neither the plain language of the 1990 amendment nor the policies which underlie the subsection support such an interpretation.

VI.

Although limited, the legislative history of section 523(a)(8) teaches that the exclusion of educational loans from the discharge provisions was designed to remedy abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing for bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs.  See, e.g., 124 Cong. Rec. 1791-98 (1978); Pelkowski, 990 F.2d at 743.  By enacting section 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education -- places which lend money or guarantee loans to individuals for educational purposes -- from bankruptcy discharge.  Because such loans are not based upon a borrower's proven credit-worthiness, and because they serve a purpose which Congress sought to encourage, section 523(a)(8) protects the lender when a borrower, who often would not qualify under traditional underwriting standards, files a chapter 7 bankruptcy. See In re Merchant, 958 F.2d at 740.

In its continuing effort to prevent such abuses and to protect the solvency of educational loan programs, Congress

passed a series of amendments to section 523(a)(8) which extended its reach from educational loans to educational benefits. The amendments also extended the protection afforded under section 523(a)(8) to any lender, in certain limited circumstances. Metaphorically speaking, the modification process not only expanded subsection (8) to catch more fish in its non-dischargeability net, but has also narrowed the subsection to keep them from escaping. Epstein, Nickles & White, BANKRUPTCY: PRACTITIONER TREATISE SERIES, Vol. 2, § 7-33. at 395 (West 1992). Despite the expansive amendments, however, section 523(a)(8) still does not reach the particular type of loan at issue in this case.

Santa Fe urges us to consider the purpose of the funds received instead of the purpose of the parties in determining the type of the loan it made to Dr. Crowe. It cites In re Ealy, 78 B.R. 897 (Bankr. C.D. Ill. 1987) for the proposition that "[t]he test for determining whether a loan is a student loan is whether the proceeds of the loan were used for 'educational purposes.'" Ealy, 78 B.R. at 897, quoting In re Vretis, 56 B.R. 156, 157 (Bankr. M.D. Fla. 1985). But we ask ourselves: how far can the term "educational purposes" be stretched? Santa Fe did not provide to Dr. Crowe a means to obtain an education in exchange for the loan. The "purpose" here was not to facilitate Dr. Crowe's education, which had long since been completed; instead, and this is undisputed, the purpose of the funds was to induce Dr. Crowe to accept employment with Santa Fe by providing her with a means to repay her obligation to the NHSC, an obligation

which arose as a result of a scholarship.  That said, however, Santa Fe asks us to go further.  It contends that in addition to determining the purpose of the loan, we must determine the nature and character of the debt.  Here, Santa Fe relies on Pelkowski, wherein we noted that "the focus of section 523(a)(8) is on the nature and character of the loan, not how the recipient actually spent the money."  Pelkowski, 990 F.2d at 741, quoting In re Roberts, 149 B.R. 547 (C.D. Ill. 1993).

We believe the record amply supports the bankruptcy court's finding that the loan made by Santa Fe to Dr. Crowe had the nature and character of a buyout.  It was made solely for the purpose of securing her services and, as such, cannot be fairly characterized as an educational loan or benefit.[8]

---

[8]. This case does not involve loan consolidations, which courts routinely have viewed as "educational loans," within the meaning of 11 U.S.C. § 523(a)(8).  There is even a federal statute permitting such educational loan consolidations. See 20 U.S.C. § 1078-3.  Several courts have determined that consolidation loans meet the § 523(a)(8) definition and that the date of the consolidation loan starts the running of the seven-year limit of § 523(a)(8)(A).  See Hiatt v. Indiana State Student Assistance Comm'n, 36 F.3d 21, 25 (7th Cir. 1994) ("We conclude that, in cases in which a debtor has consolidated her educational loans pursuant to 20 U.S.C. § 1078-3, the plain language of section 523(a)(8)(A) requires that the nondischargeability period commences on the date on which the consolidation loan first became due."), cert. denied, 115 S. Ct. 1109 (1995); Martin v. Great Lakes Higher Educ. Assoc., 137 B.R. 770, 772 (Bankr. W.D. Mo. 1992) ("[T]he court finds the consolidation loan is an educational loan covered by 11 U.S.C. § 523(a)(8)(A) . . . .  The consolidated loan is nondischargeable because it first became due less than five years before the bankruptcy filing."); see also In re Roberts, No. 91-7241, 1933 WL 192816, at *3 (D. Kan. May 19, 1993) ("The court . . . agrees with the majority of courts deciding this issue and concludes that the date the debtor's consolidated loan first became due is the date for determining dischargeability under § 523(a)(8)(A).".

Furthermore, we do not find the loan "similar in nature to [a] student loan." See Appellant's Br. at 19, quoting 136 Cong. Rec. H13288. Although the loan was made by a nonprofit institution, was unsecured and was used to repay an obligation incurred in return for an educational benefit, nothing in the express language or the legislative history of section 523(a)(8) convinces us that Congress intended for loans such as the one at issue here to be non-dischargeable in a chapter 7 bankruptcy.

Moreover, in light of what we have determined to be the intended purpose of section 523(a)(8), it is also significant that whether or not Santa Fe is ultimately repaid by the Debtors, neither the federal treasury, the solvency of the NHSC nor the public service obligation of Dr. Crowe will be affected. The debt to the educational lending program has been repaid and the service obligation has been deemed fully satisfied. See Appellant's App. at 230a-31a. Furthermore, we agree with the bankruptcy court's observation that to the extent this decision might be interpreted as discouraging the refinancing of educational debt (a position advanced by Santa Fe which we consider to be of dubious merit), the purposes of section 523(a)(8) will not be frustrated.

## VII.

For the reasons set forth above, we conclude that the loans made pursuant to the terms of an employment contract which are used, in turn, to repay educational debt are not, themselves, non-dischargeable educational loans within the meaning of

11 U.S.C. § 523(a)(8).  Accordingly, we will affirm the judgment of the district court.

_____