**In re Anthony Joseph MEINHART, SS # 555–65–2513, and Katrina Marie Meinhart, SS # 547–81–0099, Debtors.**

**UNITED RESOURCE SYSTEMS, INC., Plaintiff,**

v.

**Anthony Joseph MEINHART, Defendant.**

**Bankruptcy No. 96–21632–PAC.**
**Adversary No. 96–1841–SBB.**

United States Bankruptcy Court,
D. Colorado.

Aug. 7, 1997.

Richard N. Gonzales, Garcia & Gonzales, P.C., Denver, CO, for United Resource Systems, Inc.

Thomas E. Croak, Longmont, CO, for Anthony Joseph Meinhart.

## ORDER ON MOTION FOR JUDGMENT

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Judgment and Brief in Support thereof filed by the Defendant/Debtor on June 23, 1997 and the Response thereto filed by the Plaintiff on July 10, 1997.

This is an issue of first impression in this District and there is little case law addressing the question directly on point.

This issue presented to the Court: May the creditor, a for-profit education program lender—as opposed to a government, government-related, or non-profit lender—except from discharge its claim against the Debtor pursuant to 11 U.S.C. § 523(a)(8)?

This Court concludes that a strictly for-profit educational lender does not qualify as a creditor which may exempt from discharge its claim against a student pursuant to 11 U.S.C. § 523(a)(8).

DOES FIND as follows:

1. In December, 1995, Defendant/Debtor Anthony Joseph Meinhart executed a promissory note which entitled him to finance the purchase price of a truck driving curriculum from CRST, Inc.[1] Defendant/Debtor received the truck driving training and subsequently defaulted on his obligation under the promissory note.

2. The Defendant/Debtor filed a Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code on September 19, 1996. Although the Defendant/Debtor listed CRST, Inc. on his creditor matrix, CRST, Inc. was not actually scheduled as a creditor in the Debtors' bankruptcy schedules.

3. The instant adversary proceeding was commenced by the filing of a Complaint to Determine Dischargeability of a Debt on December 17, 1996. The Plaintiff maintains that the $3,389.99[2] that it is owed by the Defendant/Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

4. The Defendant/Debtor received a discharge on December 26, 1996 and the underlying bankruptcy case was closed on January 8, 1997.

5. On May 6, 1997, this Court entered an Order scheduling the within matter for a final pre-trial conference on June 12, 1997 and a trial on September 16, 1997.

6. At the final pre-trial conference, this Court directed that Defendant/Debtor's counsel file a motion or brief on the legal issues before this Court. The instant Motion for Judgment and Response are the result of this Court's order.

7. The instant Motion, styled "Motion for Judgment," appears in the nature of a motion for summary judgment, although no citation is made to the applicable rules therefor.

8. Summary judgment may be granted only where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. *Carey v. U.S. Postal Service*, 812 F.2d 621 (10th Cir.1987).

9. On a motion for summary judgment a court must view the evidence in the light most favorable to the party opposing the motion here, the Plaintiff. *Lindley v. Amoco Production Co.*, 639 F.2d 671 (10th Cir.1981). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment in favor of the movant is proper. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ 10. Here, this Court finds, and the parties appear to agree, that there are no genuine issues of material fact, or any fact for that matter. The question appears to be purely a legal one: Does Section 523(a)(8) serve to except obligations owed to for-profit institutions for educational services from discharge? For the reasons stated herein, this Court answers the question in the negative.

11. Pursuant to 11 U.S.C. § 523(a)(8), a Chapter 7 discharge does not discharge an individual debtor from any debt

> for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—[two conditions that are not relevant under these facts]

11 U.S.C. § 523(a)(8).

12. The parties agree that there were no governmental or non-profit institution or entity involved in the subject loan. Nevertheless, the Plaintiff maintains that the final phrase of Section 523(a)(8) excepts the instant obligation from discharge, "or for an obligation to repay funds received as an educational benefit, scholarship, or stipend."

13. In a recent case addressing this issue, Judge Votolato of the Bankruptcy Court in Rhode Island observed as follows:

> The Plaintiff argues, without supporting authority, that the phrase 'or for an obli-

---

**1.** CRST, Inc. is a successor in interest to the instant Plaintiff, United Resource Systems, Inc.

**2.** $2,649.00 principal + $215.99 interest through December 1, 1996 + $525.00 attorney fees $3,389.99.

gation to repay funds received as an educational benefit, scholarship or stipend' is meant to except from discharge student loans made by a for profit institution that are neither insured nor guaranteed by a governmental unit Although both parties slated that they 'could not find any cases dealing with the issue,' there is a controlling case on point in the First Circuit. [Citing *T I Federal Credit Union v. DelBonis*, 72 F.3d 921 (1st Cir.1995) ]

*In re Shorts*, 209 B.R. 818 (Bankr.D.R.I. 1997).

14. Although the *DelBonis* case cited by *Shorts* is not directly on point,[3] it does state, in general terms that § 523(a)(8)

provides that educational loans or benefit overpayments are nondischargeable, if issued in whole or in part by an agency qualifying as a nonprofit organization. Second, the statute also makes loans issued, insured, or guaranteed by governmental units nondischargeable. A debtor's loans, thus are nondischargeable if they fall within the parameters of either provision.

*DelBonis, supra* at 926–927.

15. Another case which briefly addresses the issue is *In re Segal*, 57 F.3d 342 (3rd Cir.1995), finding "[i]mplicit in [the creditor's] argument is the assumption that any lender—commercial or nonprofit—which provides funds which, in turn, are used to repay an educational loan obligation, a fortiori, has provided 'funds received as an educational benefit'." *Segal, supra* at 348. The *Segal* court found the creditor's "interpretation of section 523(a)(8) is overly broad." *Segal, supra* at 348–349.

16. While this Court agrees with the conclusion reached in *Shorts*, this Court believes that a more thorough discussion of the bases of that decision would be helpful.

17. An analysis of a statute must begin with the language of the statute itself. *Touche Ross & Co. v. Redington*, 442 U.S.

560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

18. This Court finds that Plaintiff's position with regard to the scope of Section 523(a)(8) does not comport with the mandate of statutory construction: Where the language of the statute is clear, it must be followed. Court construction is only required where there is an ambiguity. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' In such cases, the intention of the drafters rather than the strict language controls." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)(quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). See, generally, *U.S. v. Turkette*, 452 U.S. 576, 579–81, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Fidelity Savings & Investment Co. v. New Hope Baptist*, 880 F.2d 1172, 1175 (10th Cir.1989); *In re Storage Technology Corp.*, 48 B.R. 862, 865 (D.Colo. 1985).

19. Similarly, the Court is to look "not only to a single sentence or member of a sentence, but to the provisions of the whole law, as to its object and policy." *Dalton v. I.R.S.*, 77 F.3d 1297, 1299 (10th Cir.1996)(citing *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986)).

20. Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder. The former, longer lived portions of Section 523(a)(8) would, therefore, be rendered meaningless. Such a conclusion is contrary to another clear mandate of statutory construction: A statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous. *Rake v. Wade*, 508 U.S. 464, 471–472, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993); *Pennsylvania Dept. of Public Wel-*

---

3. The *DelBonis* case dealt with whether or not a federal credit union was a governmental unit, which the court found that it was. Arguably, the entire discussion of whether or not the credit union was a governmental unit would have been unnecessary if the Plaintiff's position is accepted, but the court never came out and squarely addressed the issue at hand.

*fare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–2133, 109 L.Ed.2d 588 (1990); *In re Vause,* 886 F.2d 794, 801 (6th Cir.1989); *Seawinds Ltd. v. Nedlloyd Lines, B. V,* 80 B.R. 181, 185 (N.D.Cal.1987), *aff'd,* 846 F.2d 586 (9th Cir.); *cert. den'd,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *In re Kirk,* 71 B.R. 510, 515 (C.D.Ill.1987).

21. Additionally, although finding the language of the statute unambiguous and an examination of legislative history to be, therefore, unnecessary, this Court's conclusion herein is further bolstered by what little legislative history is available. As the Third Circuit in *Segal* observed,

> Although limited, the legislative history of section 523(a)(8) teaches that the exclusion of educational loans from the discharge provisions was designed to remedy abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing for bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs. *See, e.g.,* 124 Cong.Rec. 1791–98 (1978); *[In re] Pelkowski,* 990 F.2d [737,] 743 [ (3rd Cir.1993) ]. By enacting section 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education— places which lend money or guarantee loans to individuals for educational purposes—from bankruptcy discharge. Because such loans, are not based upon a borrower's proven credit-worthiness, and because they serve a purpose which Congress sought to encourage, section 523(a)(8) protects the lender when a borrower, who often would not qualify under traditional underwriting standards, files a chapter 7 bankruptcy. *See In re Merchant,* 958 F.2d [738,] 740 [ (6th Cir.1992) ]. In its continuing effort to prevent such abuses and to protect the solvency of educational loan programs, Congress passed a series of amendments to section 523(a)(8) which extended its reach from educational leans to educational benefits.

> \* \* \* \* \* \*

[I]n *light* of what we have determined to be the intended purpose of section 523(a)(8), it is also significant that whether or not [the lender [4]] is ultimately repaid by the Debtors, neither the federal treasury, the solvency of the NHSC [National Health Service Corps] nor the public service obligation of Dr. Crowe [the debtor] will be affected. The debt to the educational lending program has been repaid and the service obligation has been deemed fully satisfied.

*Segal, supra* at 348–349 (emphasis added).

■ 22. Finally, even if Section 523(a)(8) were found to be applicable to obligations such as this owed to for-profit entities, this Court finds that the obligation at issue does not squarely fall within the meaning of "educational benefit, scholarship, or stipend." Although the Plaintiff repeatedly states that "the parties apparently agree" on the fact that the debt is an obligation to repay funds received as an educational benefit, scholarship, or stipend, this Court does not see that the characterization is quite so clear.

23. The Plaintiff has characterized the relationship between the parties as follows:

> Defendant signed a 'Promissory Note and Disclosure Statement' (note) wherein he promised to pay CRST, Inc. (CRST) monies in exchange for his enrollment and training in an over-the-road truck driving course sponsored by CRST through an educational institution.

*Response,* p. 1.

24. From this statement of facts, it is unclear whether the Defendant/Debtor actually received funds. If no funds were received by the Defendant/Debtor, several courts have struggled with conceiving how there could be an obligation to "repay." *See, In re Coole,* 202 B.R. 518 (Bankr.D.N.M.1996)(finding that all of the charges were extensions of credit, but no funds were paid by the creditor to the debtor); *In re Alibatya,* 178 B.R. 335, 338 (Bankr.E.D.N.Y.1995) (same) ("No linguistic gyration can twist a no payment or under-

---

4. The affected lender was a non-profit institution which essentially refinanced an existing educational debt to enable the debtor, a physician, to escape her remaining service obligation to NHSC and to begin working for the prospective employer immediately.

payment by Plaintiff to an overpayment by Defendant. Similarly, Plaintiff's student housing default cannot be considered a debt for 'an obligation to repay funds received as an educational benefit, scholarship or stipend.' No funds were ever received by Plaintiff.").

Accordingly, it is

ORDERED that the Motion for Judgment filed by the Defendant/Debtor on June 23, 1997 is GRANTED. And it is

FURTHER ORDERED that the trial scheduled to commence on September 16, 1997 is VACATED. And it is

FURTHER ORDERED that the Complaint to Determine Dischargeability of a Debt is DISMISSED. And it is

FURTHER ORDERED that the Clerk may close the within adversary proceeding upon this Order becoming final.