**In re Pauline CLARKE, Debtor.**

**Pauline Clarke, Plaintiff,**

**v.**

**Roderick R. Paige, Secretary** [1] **United States Department of Education, Defendant.**

**Bankruptcy No. 99–30654DWS.
Adversary No. 00–911.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 21, 2001.

---

1. Effective January 20, 2001, Dr. Roderick R. Paige became the Secretary of the Department of Education and is automatically substituted as the named defendant in place of the original defendant, Richard Riley, pursuant to Federal Rule of Civil Procedure 25(d)(1), incorporated by Federal Rule of Bankruptcy Procedure 7025.

Henry J. Sommer, CBAP, Philadelphia, PA, for Debtor/Plaintiff.

Virginia R. Powell, Asst. U.S. Attorney, Philadelphia, PA, for Defendant.

## OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion of Dr. Roderick R. Paige, the Secretary of the United States Department of Education (the "Secretary"), for Summary Judgment (the "Motion") in response to the Debtor's Complaint to Determine Dischargeability of Student Loan pursuant to 11 U.S.C. § 523(a)(8). The issue before the Court is whether the Debtor's education loan debt, consolidated post-petition under a federal consolidation loan program, is dischargeable under 11 U.S.C. § 523(a)(8). For the reasons that follow, the Court finds that it is nondischargeable as a matter of law and that summary judgment must be entered in favor of the Secretary and against the Debtor.

## BACKGROUND

The facts of this case are not in dispute. The Debtor filed a voluntary petition for bankruptcy under Chapter 7 on August 20, 1999 (the "Petition").[2] On December 1, 1999, this Court entered an Order granting the Debtor a discharge under 11 U.S.C. § 727, and the bankruptcy case was closed on December 10, 1999.

■ On or about June 22, 2000 the Debtor received a Federal Direct Consolidation Loan under the William D. Ford Direct Loan Program (the "Consolidation Loan"). Debtor's Deposition Testimony given April 2, 2001 ("Debtor's Dep.") at 45; Federal Direct Consolidation Loan Application and Promissory Note, Ex. B-1 to the Motion. The purpose of the Consolidation Loan was to pay off two outstanding student loans owed by the Debtor to the Department of Education (the "Original Loans"). Debtor's Dep. at 47; Ex. B-1 to the Motion. The Original Loans were not discharged in her bankruptcy case as no adversary action had been instituted by the Debtor to make a determination as to dischargeability.[3] The Debtor currently owes approximately $6000 on the Consolidation Loan and is in default of her payment obligations. Debtor's Dep. at 47; Ex. D. to the Motion.[4]

The Debtor moved to reopen this case for the purpose of seeking an adjudication

---

2. I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D.Ill.1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr.E.D.Pa.1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir.1995).

3. Although both parties appear to assume that the Original Loans are pre-petition debt, Secretary's Memorandum in Support of Motion ("Secy.'s Mem.") at 2; Debtor's Memorandum in Response to Motion at 1, neither the record evidence nor even the allegations in the Complaint appear to establish this fact. I accept the parties' assumption as contained in

their briefs as the premise upon which this dispute is founded. Indeed if I did not, my inquiry would end here. As post-petition debts, the Original Loans would be nondischargeable as a matter of law. 11 U.S.C. § 727(b). See infra Discussion, § II.

4. The Debtor's Borrow History and Activity Report, attached as Exhibit "D" to the Motion, is unauthenticated by either deposition testimony or affidavit. However, "[a]s is true with other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2722, at 384 (1998). Accord Johnson v. United States Postal Service, 64 F.3d 233, 237 (6th Cir.1995)

of the dischargeability of her educational loans under the hardship exception of 11 U.S.C. § 523(a)(8), and the case was re-opened on November 27, 2000. On December 4, 2000 the Debtor filed the instant adversary action. In response to the Complaint, the Secretary raises as an affirmative defense the issue that is presented in this Motion, *i.e.*, whether the post-petition consolidation of the educational loans created a new obligation not subject to discharge.

## DISCUSSION

### I.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[5] *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, the facts are not in dispute. Therefore, the issue before the Court is solely a legal one readily addressed by this summary proceeding.

### II.

 The general policy behind the Bankruptcy Code is to provide a "fresh start" for insolvent debtors so that they may "enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of *preexisting* debt.'" *Santa Fe Medical Services, Inc. v. Segal (In re Segal)*, 57 F.3d 342, 346 (3d Cir.1995) (*quoting Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991))(emphasis added). To this end, section 727 states in relevant part: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose *before the date of the order for relief under this chapter.*" 11 U.S.C. § 727(b) (emphasis added). The commencement of a voluntary case under Chapter 7, by the filing of a petition, constitutes an "order for relief." 11 U.S.C. § 301. Thus, debts incurred post-petition, are generally nondischargeable. *See generally In re Hicks* 144 B.R. 419 (Bankr.E.D.Ark.1992).

 This does not mean, conversely, that all pre-petition debts are dischargeable. Congress has made a decision to "exclude certain obligations from the general policy of discharge where the public policy at issue outweighs the debtor's need for a fresh start." *Segal*, 57 F.3d at 346. Therefore, it enacted § 523 of the Bankruptcy Code, "Exceptions to discharge," which provides in relevant part:

(ruling that the "failure to object to evidentiary material submitted in support of a summary judgment motion constitutes a waiver of those objections."); *H. Sand & Co., Inc. v. Airtemp Corporation*, 934 F.2d 450, 454–55 (2d Cir.1991) (Rule 56 does not require parties to authenticate documents "where appellee did not challenge the authenticity of the documents in the district court."); *Dautremont v. Broadlawns Hospital*, 827 F.2d 291, 294–95 (8th Cir.1987) (affirming summary judgment where appellant failed to object in district court to its consideration of documents not in compliance with Rule 56 and failed to demonstrate that district court's con-

sideration of documents constituted reversible error); *Giovacchini v. Perrine*, 1995 WL 80102, at \*3 n. 1 (E.D.Pa. Feb.27, 1995) (*citing* Federal Practice and Procedure § 2722) (holding that unauthenticated medical reports would be considered in ruling on motion for summary judgment since no objection was raised thereto). Here, the Debtor does not challenge the authenticity or accuracy of the Activity Report, nor the fact that she is in default on the Consolidation Loan.

5. Federal Rule of Civil Procedure 56 is incorporated by Federal Rule of Bankruptcy Procedure 7056.

(a) A discharge under section 727, 1141 or 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). Thus, educational loan debt is one of those obligations that Congress has decided to make generally nondischargeable, absent a showing of "undue hardship." [6]

▓▓▓▓ Significantly, Congress has placed the burden upon the debtor, not the creditor, to bring an action to dispute the nondischargeability of an educational loan, for such loans are "nondischargeable by operation of law until the debtor seeks and receives a determination to the contrary." *Lester E. Cox Medical Centers v. Penn (In re Penn)*, 262 B.R. 788, 789 (Bankr. W.D.Mo.2001). *Accord Andersen v. UNI-PAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1258 (10th Cir.1999) (educational loans are presumptively nondischargeable); *Kahl v. Texas Higher Education Coordinating Bd. (In re Kahl)*, 240 B.R. 524, 530 (Bankr.E.D.Pa.1999)(Section 523 is not self-effectuating. Rather, it requires the debtor to bring an adversary proceeding to determine whether a student loan debt is dischargeable under that provision); *Stout v. United States Dept. of Educ. (In re Stout)*, 231 B.R. 313, 315 (Bankr.W.D.Mo.1999) (same). *See also* Senate Report No. 95–989, 95th Cong.2d Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862–5865("[Section 523(a)(8)] 'is intended to be self-executing' "). As noted by one court:

This characteristic of § 523(a)(8) has been described as both self-effectuating/executing, and not self-effectuating/executing. [citations omitted] The confusion is understandable considering that the characterization of § 523(a)(8) will depend on the perspective from which it is viewed. Viewed from the creditor's perspective, § 523(a)(8) appears to be self-effectuating because the

---

**6.** Indeed, the evolution of § 523(a)(8) evidences a clear Congressional intent to remedy abuses in the educational loan system by restricting the ability of debtors to discharge educational loans. *Segal*, 57 F.3d at 348. That section has been repeatedly modified to progressively limit the instances in which educational loans can be discharged by both expanding the meaning of "educational loans," *id.* at 346–47 (discussing amendments through 1990), and by narrowing the exceptions to this general rule of nondischargeability. This was most recently seen in the Higher Education Amendments of 1998, which eliminated entirely the prior exception for loans which became due more than seven years before the date of the filing of the Petition, leaving only the "undue hardship" exception. Pub.L. No. 105–244, § 971, 112 Stat. 1581, 1837 (1998) (*repealing* 11 U.S.C. § 523(a)(8)(A)). "Metaphorically speaking, the modification process not only expanded subsection (8) to catch more fish in its nondischargeability net, but has also narrowed the subsection to keep them from escaping." *Segal*, 57 F.3d at 349. Debtor's position that educational loans that have been consolidated post-petition may be found dischargeable under § 523(a)(8) so as to render the post-petition replacement loan an invalid reaffirmation is an expansion of the ability of debtors to discharge educational loans which runs counter to the above history. Given the decision herein which is founded solely on statutory interpretation, I need not address the obvious implications for the student loan program if Debtor's position was adopted.

debt will automatically be nondischargeable without further action being taken. Viewed from the debtor's perspective, though, he or she must institute a dischargeability proceeding in order to get the desired relief; thus, the statute appears to be non self-effectuating. *Janc v. Coordinating Board for Higher Education (In re Janc)*, 251 B.R. 525, 529–30 n. 6 (Bankr.W.D.Mo.2000) (citations omitted). I agree with the *Janc* court that "the term 'self-effectuating' better describes the operation of the statute, inasmuch as § 523(a) is entitled 'Exceptions to Discharge,' and § 523(a)(8) excepts a debt from the discharge without the need for any further action by a creditor." *Id.*

■ "A complaint [to obtain a determination of the dischargeability of a debt] other than under § 523(c) may be filed at any time." Fed. R. Bankr.P. 4007(b). Section 523(a)(8) does not fall within the ambit of § 523(c) and, unlike the § 523(c) debts which are rendered discharged if no action is taken by a creditor within the proscribed period, requires no action by the creditor as such debts are presumptively nondischargeable.[7] However, that consequence may be altered by a determination of dischargeability if sought by the debtor "at any time," even after the bankruptcy case is completely administered and closed. *Saler v. Saler (In re Saler)*, 205 B.R. 737, 747 (Bankr.E.D.Pa.1997). It is this procedural vehicle that has been employed by the Debtor here.

■ The ability of the Debtor to avail herself of this statutory right requires me to focus on the precise loans that are sought to be discharged. It is undisputed that after the Debtor received her discharge, and without seeking a determination of the dischargeability of the Original Loans, the Debtor sought and obtained the Consolidation Loan. The consolidation of educational loans is governed by the Higher Education Act (the "HEA"), which states in relevant part: "Loans made under this section which are insured by the Secretary shall be considered to be *new* loans made to students for the purpose of § 424(a) [20 U.S.C. § 1074(a) ] of this title." 20 U.S.C. § 1078–3(e) (emphasis added). Further, it requires that lenders under the Act enter into agreements with the Secretary of Education or a guarantee agency providing, among other things, "that the proceeds of each consolidation loan will be paid by the lender to the holder or holders of the loans so selected *to discharge the liability on such loans.*" 20 U.S.C. § 1078–3(b)(1)(D) (emphasis added). The plain language of these sections thus makes it clear that federal consolidation loans are new agreements which discharge the liabilities of the old loans and create their own obligations. *See also Hiatt v. Indiana State Student Assistance Comm'n*, 36 F.3d 21, 24 (7th Cir.1994) ("[W]hen a borrower undertakes a consolidation loan, the original loan is repaid in full and the debt is discharged"); *Martin v. Great Lakes Higher Educ. Corp. (In re Martin)*, 137 B.R. 770, 772 (Bankr. W.D.Mo.1992) ("The statutory language is clear that a consolidated loan is considered a new loan for educational purposes under the federally insured student loan pro-

---

7. Section 523(c) carves out debts of the kind described in paragraphs (2)[money obtained by false pretenses or fraud], (4)[fraud or defalcation while acting in a fiduciary capacity], (6)[willful and malicious injury to another entity or to property of another entity], and (15)[certain divorce and separation obligations] of subsection (a) and provides that these debts, notwithstanding their nondischargeability under § 523(a), will be automatically discharged unless the creditor seeks a determination of nondischargeability prior to the bar date set forth in Bankruptcy Rule 4007(c) for Chapter 7, 11 or 12 cases or (d) for Chapter 13 cases.

gram. . . . and, as expressly provided by 20 U.S.C. § 1078–3(b)(1)(D), the old notes were discharged").[8]

▮▮▮ The provisions of HEA are subject to the Bankruptcy Code's protections regarding the reaffirmation of dischargeable debt. 11 U.S.C. § 524(c). The purpose of § 524(c) is "to 'protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts' . . . [and] to avoid 'the danger that creditors may coerce debtors into undesirable reaffirmation agreements.' " *In re Hovestadt,* 193 B.R. 382, 386 (Bankr.D.Mass.1996) (citation omitted). Accordingly, the Secretary is not free to enter into a consolidated loan agreement with a debtor if the loan to be consolidated or refinanced has been determined to be dischargeable unless the reaffirmation requirements of § 524 have been satisfied.[9] *See* cases cited in n. 10 *infra.*

### III.

▮▮▮ With this background, I now examine the arguments proffered by the parties. The Secretary views the Consolidation Loan as a straightforward post-petition debt which is nondischargeable pursuant to § 727(b). The Debtor, while not disputing the post-petition nature of the Consolidation Loan, argues that Bankruptcy Rule 4007 allows her to seek a determination of dischargeability of the Original Loans "at any time," a right she. has now exercised. If this Court determines the debt arising under the Original Loans to be dischargeable, the Consolidation Loan would be an invalid reaffirmation since none of the § 524(c) conditions of reaffirmation were observed. Therefore, she argues that I must first examine the merits of her dischargeability action as to the Original Loans before even looking to the Consolidation Loan. Debtor's Memorandum In Response to Secretary's Motion ("Debtor's Mem.") at 2–4. Applying the principles discussed above, I must respectfully disagree with the Debtor's analysis.

The Debtor is correct regarding the lack of a time limit under Rule 4007(b) to determine the dischargeability of an educational loan, but she incorrectly assumes that the status of the Original Loans remains in limbo until she seeks such a dischargeability determination. Debtor's Mem. at 3 ("If [debtors] do not [seek a determination], there may simply be uncertainty regarding whether the loan is discharged"). Such uncertainty is precisely what Congress intended to dispel when it made § 523(a)(8) self-effectuating. An educational loan is and remains nondischargeable, as a matter of law, until a debtor seeks and receives a determination to the contrary. *See In re Penn,* 262 B.R. at 789; *Janc,* 251 B.R. at 529–30. For this reason, the Debtor's reaffirmation argument must fail. By its own terms, § 524(c) only places reaffirmation requirements upon agreements, "the consideration for which, in whole or in part, is based on a debt that is dischargeable." 11 U.S.C. § 524(c). Because the Original Loans were nondischargeable as a

---

8. While all of the case law that my research revealed regarding the application of consolidation loans to § 523(a)(8) discusses the issue in the context of the now defunct seven year exception, their holding, that the consolidation loan extinguishes the original loan, is still valid. Moreover, while the Third Circuit has not yet addressed this issue, it has acknowledged this majority view. *Segal,* 57 F.3d at 349 n. 8.

9. This section states in relevant part: "an agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is *dischargeable* in a case under this title is enforceable . . . only if [certain reaffirmation requirements are met]." 11 U.S.C. § 524(c) (emphasis added).

matter of law when the Debtor entered into the Consolidation Loan, § 524(c) is simply inapplicable to that transaction.[10]

It cannot be disputed that the Consolidation Loan extinguished the Original Loans. *See, e.g., Hiatt,* 36 F.3d at 24. Therefore, the only loan now in existence is the Consolidation Loan, a post-petition debt which is nondischargeable under 11 U.S.C. § 727(b). Nothing in § 523(a)(8) excepts post-petition education debt, even where it may place an undue hardship upon the debtor. The Secretary's position is correct, and summary judgment must be granted in his favor.

**10.** For this reason, the cases cited by the Debtor, *see Republic Bank of California, N.A. v. Getzoff (In re Getzoff),* 180 B.R. 572 (9th Cir. BAP 1995); *Butler Consumer Discount Company v. Cain,* 50 B.R. 388 (W.D.Pa.1985); *Smith v. First Suburban National Bank (In re Smith),* 224 B.R. 388 (Bankr.N.D.Ill.1998); *In re Lowery,* 187 B.R. 761 (Bankr.M.D.Fla. 1995); *Lindale National Bank v. Artzt (In re Artzt),* 145 B.R. 866 (Bankr.E.D.Tex.1992), all of which involve debts that were undisputably discharged in the bankruptcy, are simply inapposite.