**In re Tonee BUWANA, a/k/a Anthony Gaddy, Debtor.**

**Tonee Buwana, a/k/a Anthony Gaddy, Plaintiff,**

**v.**

**U.S. Department of Education, Defendant.**

**Bankruptcy No. 96–24509–SBB.**
**Adversary No. 03–1461–SBB.**

United States Bankruptcy Court,
D. Colorado.

May 3, 2004.

---

James Boisclair, Denver, CO, for Plaintiff.

J. Benedict Garcia, Assistant United States Attorney, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by defendant, United States Department of Education ("Defendant" or "Education"), on March 1, 2005 (Docket # 70) and the Response thereto filed by plaintiff, Tonee Buwana, a/k/a Anthony Gaddy ("Plaintiff" or "Buwana") filed on March 16, 2005 (Docket # 72).[1] The Court, having reviewed the file and being advised in the premises, makes the following findings, conclusions and Order.

For the reasons stated herein, the Court concludes that the Motion for Summary Judgment should be GRANTED. Judgment shall enter in favor of the Defendant and against the Plaintiff finding that the student loan debt owed by the Plaintiff to Defendant is nondischargeable.

**1.** Defendant also filed a Reply to Plaintiff's Response to Motion for Summary Judgment on April 4, 2005 (Docket # 76). This Court's Order and Notice of Trial Pursuant to Fed. R.Bankr.P. 7016 (Fed.R.Civ.P. 16(b)) states

## I. *Findings of Fact*

The following findings of fact are stipulated to by the parties:

1. [Buwana] obtained two Guaranteed Student Loans ("GSLs") in 1980 for attendance at the University of Colorado at Boulder. (Declaration of Lynda Faatalale ("Faatalale Dec.") at ¶ 23) [attached to the Motion for Summary Judgment]. Specifically, Buwana signed a promissory note for a GSL of $5000 on April 3, 1980, and then signed another note for $5000 on June 13, 1980. The loans were made by Capital Federal Savings and Loan and were guaranteed by the Colorado Student Loan Program. *Id.* at Attachment 1.

2. Buwana defaulted on those loans, and the holder assigned them to the United States Department of Education ("Education") on March 23, 1990. (Faatalale Dec. at ¶ 23).

3. On or about July 16, 1996, Education's Direct Loan Servicing Center received an Application/Promissory Note for a William D. Ford Federal Direct Consolidation Loan ["Direct Consolidation Loan"] signed by Buwana on July 8, 1996, along with an Authorization to Release Information and a Repayment Plan Selection form, both dated July 8, 1996. (Faatalale Dec. at ¶ 24).

4. With the documents described in paragraph three, Buwana submitted an Order for Change of Name dated July 5, 1996. *Id.*

5. On August 22, 1996, Buwana faxed Education an Income Contingent Repayment Plan Consent to Disclosure of Tax Information and Repayment Plain [sic] Selection form. *Id.*

that "[r]eplies to responses to dispositive motions may only be filed upon leave of court." Leave of this Court was not sought and therefore the Reply will not be considered.

6. Buwana filed a Chapter 7 bankruptcy petition on November 18, 1996.

7. Education disbursed the Direct Consolidation Loan of $14,241.38 on November 20, 1996. (Faatalale Dec. at ¶ 25). The disbursement amount was later adjusted, and the original principal balance of the loan was $14,211.20. *Id.*

8. Buwana Submitted an In–School Deferment Request to Education dated February 13, 1997. (Faatalale Dec. at ¶ 26).

9. Buwana submitted an Unemployment Deferment Request to Education dated June 1, 1998. *Id.*

10. Buwana submitted a General Forbearance Request to Education dated June 10, 1998. *Id.*

11. Buwana made two payments toward his Direct Consolidation Loan. Specifically, he made one payment of $159 on December 9, 2000 and another of $85 on January 11, 2001 (*Id.* at Attachment 5, page 2 of 13). (Faatalale Dec. at ¶ 27).

12. Education declared the Direct Consolidation Loan to be in default, and transferred the account to Education's Debt Collection Service ("DCS" on August 7, 2001).[2]

The parties separately filed a Stipulation Regarding Trial in this matter whereby Plaintiff states that he "abandons so much of his cause of action as is based upon undue hardship [under] § 523(a)(8)(B)."

## II. *Issues*

There are three issues before the Court:

(1) Whether the Direct Consolidation Loan extinguished the GSLs and created a new loan obligation.

(2) If the Direct Consolidation Loan extinguished the GSLs and created a new loan obligation, whether the new loan constituted a *postpetition* debt and therefore was not discharged pursuant to 11 U.S.C. § 727(b).

(3) If the Direct Consolidation Loan extinguished the GSLs and created a new loan obligation, whether the new loan constituted a *prepetition* debt that first became due more than 7 years before the date of the filing of the petition and is dischargeable under 11 U.S.C. § 523(a)(8)(A).

For the reasons set forth below, the Court concludes that the Direct Consolidation Loan extinguished the GSLs and created a new loan obligation. The Court concludes that the student loan debt owed by the Plaintiff to the Defendant is either not discharged under 11 U.S.C. § 727(b) or it is nondischargeable under 11 U.S.C. § 523(a)(8)(A).

## III. *Discussion*

### A. Standard for Summary Judgment

Summary judgment is to be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R.BANKR.P. 7056 which applies FED. R.CIV.P. 56. This Court will review the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party—here Plaintiff. *Koch v. Koch Industries,* 203 F.3d 1202, 1212 (10th Cir.2000). Here, the parties do not dispute the facts. The only question before the Court is whether the moving party is entitled to judgment as a matter of law. Thus, this matter is properly before the Court on summary judgment.

---

**2.** Defendant's Motion for Summary Judgment pp. 3–5.

## B. The William D. Ford Federal Direct Loan Program

The loan program involved in this case, The William D. Ford Federal Direct Loan Program ("Direct Loan Program"), is authorized under Title IV, Part D of the HEA of 1965, as amended. 20 U.S.C. § 1087a, *et seq.* There are four types of loans offered under the Direct Loan Program: (1) subsidized Direct Stafford loans; (2) unsubsidized Direct Stafford loans; (3) Direct Parent Loans for Undergraduate Students; and (4) Direct Consolidation loans (the loan in play here).

Under the Direct Loan Program, a borrower may consolidate one or more education loans made under certain federal programs into one or more Direct Consolidation Loans. Loans consolidated into a Direct Consolidation Loan are discharged when the Direct Consolidation Loan is originated.[3] Among the types of loans that may be consolidated are Guaranteed Student Loans ("GSLs").[4] A borrower whose loans are in default may consolidate those loans if he has made satisfactory repayment arrangements on the defaulted loan or if he agrees to repay the consolidation loan under the income contingent repayment plan and signs a form consenting to disclosure of tax return information.[5]

When the Secretary of Education ("Secretary") approves an application for a consolidation loan, the Secretary pays to the holder of a loan selected for consolidation the amount necessary to discharge the loan, and upon receipt of the proceeds of a Direct Consolidation Loan, the holder of a consolidated loan shall promptly apply the proceeds to fully discharge the borrower's obligation on the consolidated loan.[6]

## C. The Direct Consolidation Loan Extinguished the GSLs and Created a New Loan Obligation

The parties agree and this Court concludes that, at the time the Plaintiff filed his Chapter 7 bankruptcy petition on November 18, 1996, 11 U.S.C. § 523(a)(8) provided that:

A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing for the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents...

Section 523(a)(8) was amended as a part of the Higher Education Amendments of 1998 to delete paragraph (a)(8)(A) in order to eliminate any time limitations on the dischargeability of claims under this section.[7] "Thus, educational loan debt is one of those obligations that Congress has de-

---

**3.** *See* 34 C.F.R. § 685.220(a).

**4.** *See* 34 C.F.R. § 685.220(b)(2).

**5.** *See* 34 C.F.R. §§ 685.220(d)(1)(ii)(E) and 685.220(d)(1)(ii)(F).

**6.** *See* 34 C.F.R. § 685.220(f).

**7.** Pub.L. No. 105–244, § 971, 112 Stat. 1581, 1837 (1998).

cided to make generally nondischargeable, absent a showing of 'undue hardship.' " [8]

 Plaintiff asserts that the debts in question here are the 1980 GSLs. It is a debtor's burden to demonstrate that educational loans are dischargeable.[9] An educational loan "insured or guaranteed by a governmental unit, or made under any program funded in whole or in party by a governmental unit or nonprofit institution" is and remains nondischargeable, as a matter of law, until the debtor seeks and receives a determination that it is dischargeable.[10]

 Barring the execution of the July 8, 1996 Direct Consolidation Loan, the two original GSLs entered into in 1980 *may* have been dischargeable when the bankruptcy petition was filed in 1996. Nevertheless, Debtor's actions (seeking the consolidation and executing the July 8, 1996 Direct Consolidation Loan), together with his inaction (failing to seek a determination of dischargeability during the pendency of his case), as a matter of law, eviscerates Debtor's ability to discharge this obligation.[11] The loan that is now in question, here, is the Direct Consolidation Loan entered into only a few months prepetition and, to which, the Defendant funded post-

petition. Regardless of how characterized, as discussed *infra*, the debt is either not dischargeable under section 523(a)(8)(A) or it is not subject to discharge under section 727(b).

### D. Under a Novation Analysis the Direct Consolidation Loan Is a *Postpetition* Debt that is Not Discharged under 11 U.S.C. § 727(b).

██ "The act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party" is known as a novation. BLACK'S LAW DICTIONARY 1091 (7th ed.1999). In this instance, the Direct Consolidation Loan substitutes a new obligation for an old obligations, the GSLs.

 The contract of novation has four prerequisites: (1) a previous valid obligation; (2) an agreement between the parties to abide by the new contract; (3) a valid new contract; and (4) the extinguishment of the old obligation by the substitution of the new one.[12] The parties need not expressly manifest their intent to accomplish a novation, but a novation may be inferred from the facts and circumstances

---

8. *Clarke v. Paige (In re Clarke)*, 266 B.R. 301, 306 (Bankr.E.D.Pa.2001).

9. *Poland v. Educational Credit Management Corporation (In re Poland)*, 382 F.3d 1185, 1189 (10 th Cir.2004) (proper way to discharge a student loan debt is through an adversary proceeding); *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1256 (10th Cir.1999)(normally, the proper way to discharge a student loan debt is by way of an adversary proceeding, but where the plan was *res judicata* on the issue of dischargeability, the debt may be dischargeable). The Court notes that footnote 2 of *Poland* seems to indicate that the Tenth Circuit panel in *Andersen* was wrong to allow a plan *res judicata* effect and an adversary proceeding was required.

10. *See Lester E. Cox Medical Centers v. Penn (In re Penn)*, 262 B.R. 788, 789 (Bankr. W.D.Mo.2001).

11. In effect, the Debtor had two days after the date of filing to inform the Defendant of his bankruptcy and, perhaps, put the brakes on the funding of the loan. Moreover, Debtor could have, but did not, seek relief from the Defendant or this Court pre-discharge.

12. *See, e.g., Moffat County State Bank v. Told*, 800 P.2d 1320 (Colo.1990); *Phoenix Power Partners, L.P. v. Colo. Pub. Utils. Comm'n*, 952 P.2d 359 (Colo.1998); *see also, e.g., Haan v. Traylor*, 79 P.3d 114, 116 (Colo.App.2003)

surrounding the transaction.[13] While the question of "[w]hether there has been a novation is ordinarily a question of fact [thus generally precluding summary judgment]," [14] here, the parties have stipulated to the facts, and, furthermore, the Direct Consolidation Loan evidences the express intent of the parties to enter into a novation. Specifically, section E of the Direct Consolidation Loan provides, in part, as follows:

> I promise to pay the U.S. Department of Education (ED) all sums (hereafter "loan" or "loans") disbursed under the terms of this Promissory Note *to discharge my prior loan obligations,* plus interest and other fees that may become due as provided in this Promissory Note. If I fail to make payments on this Promissory Note when due, I will also pay collection costs including attorney's fees and court costs. If ED accepts this application, *it is my understanding that ED will on my behalf send funds to the holder(s) who currently holds the loan(s) selected for consolidation in order to pay off this loan(s).* I further understand that the amount of this loan will equal the sum of the amounts that the holders of the loans selected for consideration verify are the payoff balances on these loans. *My signature on this Promissory Note will serve as my authorization to pay off the balance(s) of the loans selected for consolidation as provided by the holder(s) of such loan(s).* This amount may be more or less than the estimated total balance I have indicated above. If the verified total balance on the loans to be consolidated exceeds my estimate by $1,000 or more, ED will notify me before originating my loan.

> I understand that this is a Promissory Note. I will not sign this Promissory Note before reading it including the text on the reverse side, even if I am advised not to read the Promissory Note. I am entitled to an exact copy of this Promissory Note and a statement of the Borrowers Rights and Responsibilities. My signature certifies that I have read, understand and agree to the terms and conditions of this Promissory Note... [15]

Looking to the prerequisites of novation, *only,* this Court concludes that the novation took effect when the Defendant made the disbursement on November 20, 1996. That is, it was at this time that the old obligation was extinguished by the disbursement of funds.[16] Under a novation analysis, the Direct Consolidation Loan was a post-petition debt that was not and is not discharged under 11 U.S.C. § 727(b).

**E. Under *Clarke v. Paige and Stricklen v. W.D. Ford Direct Consolidation (In re Stricklen),* the Direct Consolidation Loan Constituted a *Prepetition* Debt That is Not Dischargeable under 11 U.S.C. § 523(a)(8)(A)**

In reviewing the limited case law dealing with the Direct Loan Program and the

---

13. *Haan,* 79 P.3d at 116.

14. *Moffat,* 800 P.2d at 1323.

15. Attachment 4 to Defendant's Motion for Summary Judgment (emphasis added). The copy of the Direct Consolidation Loan as attached to the Motion for Summary Judgment reflects that the Plaintiff did execute the document. As an aside, however, due to the age of the document, stamping of the document, and quality of reproduction, some of the document and text contained therein was obscured. However, the text incorporated herein was legible.

16. *Moffat,* 800 P.2d at 1323 ("The pre-existing obligation must be extinguished or there is not a novation. A mere modification will not suffice; anything remaining of the original obligation prevents a novation.")

specific issues before the Court, the Court came across a case quite similar to the facts in this case: *Clarke v. Paige (In re Clarke).*[17] In that case, the debtor, after receiving her discharge and without seeking a determination of the dischargeability of her prepetition student loans, sought and obtained a consolidation loan and, thereafter, filed an adversary complaint seeking determination of the dischargeability of her student loan debt. The Court concluded that while the debtor's original loans would be nondischargeable as a matter of law when she entered into the consolidation loan, the consolidation loan was a nondischargeable postpetition debt.

While the *Clarke* opinion is not precedent for this Court, its reasoning and well-articulated determination of the issue is very persuasive. The Court found that:

> The consolidation of educational loans is governed by the Higher Education Act (the "HEA"), which states in relevant part: "Loans made under this section which are insured by the Secretary shall be considered to be *new* loans made to students for the purpose of § 424(a) [20 U.S.C. § 1074(a)] of this title." 20 U.S.C. § 1078–3(e) (emphasis added). Further, it requires that lenders under the Act enter into agreements with the Secretary of Education or a guarantee agency providing, among other things, "that the proceeds of each consolidation loan will be paid by the lender to the holder or holders of the loans so selected *to discharge the liability on such loans.*" 20 U.S.C. § 1078–(3)(B)(1)(D) (emphasis added). The plain language of these sections thus makes it clear that federal consolidation loans are new agreement

which discharge the liabilities of the old loans and create their own obligations. *See also Hiatt v. Indiana State Student Assistance Comm'n,* 36 F.3d 21, 24 (7th Cir.1994) ("[W]hen a borrower undertakes a consolidation loan, the original loan is repaid in full and the debt is discharged"); *Martin v. Great Lakes Higher Educ. Corp. (In re Martin),* 137 B.R. 770, 772 (Bankr.W.D.Mo.1992) ("The statutory language is clear that a consolidated loan is considered a new loan for educational purposes under the federally insured student loan program ... and, as expressly provided by 20 U.S.C. § 1078–3(b)(1)(D), the old notes were discharged").[18]

*Clarke,* it would thus seem, stands for the proposition that the Direct Consolidation Loan takes effect on the date it is signed; that is, July 8, 1996. Another case analyzing the W.D. Ford Direct Consolidation loan that agrees with this conclusion and dovetails well with *Clarke,* is the case of *Stricklen v. W.D. Ford Direct Consolidation (In re Stricklen).*[19] There, the Bankruptcy Court for the Eastern District of Arkansas concluded that the W.D. Ford Direct Consolidation loan becomes effect on the date it is *signed.*[20]

Admittedly, *Clarke* is not without some distinction from the case at hand as it appears that both the application for the consolidation loan and the disbursement of funds occurred *postpetition.* Conversely, the loan involved in *Stricklen* was signed and funds were disbursed *prepetition.* Here, the Plaintiff signed the Direct Consolidation Loan pre-petition, but the loan was not funded—the Defendant did not disburse the funds thereunder—until postpetition. Thus, as discussed in the nova-

---

**17.** 266 B.R. 301 (Bankr.E.D.Pa.2001).

**18.** 266 B.R. at 307 (emphasis in the original).

**19.** 224 B.R. 905 (Bankr.E.D.Ark.1998)

**20.** 224 B.R. at 906.

tion section *supra,* the consolidation of the loans straddles the date of filing. If the Court relies on *Clarke* and *Stricklen,* the date of signing the Direct Consolidation Loan is the operative date. Using that date, the Direct Consolidation Loan was *not* in repayment for more than seven years before the date of the filing of the petition so as to be dischargeable under 11 U.S.C. § 523(a)(8)(A).[21]

### F. The Disbursement of the Direct Consolidation Loan on November 20, 1996 Did Not Violate 11 U.S.C. § 362

█ Plaintiff contends that "the triggering mechanism [for the funding of the loan] amounted to little more than [Defendant] taking money from one of its pockets and putting it into another," thus, violating 11 U.S.C. § 362(a)(6). It cannot be disputed that the Direct Consolidation Loan at the time of funding—that is, November 20, 1996—extinguished the GSLs. Nevertheless, the funding of a loan is quite different from such acts "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."[22] The case cited by the Plaintiff in support of his violation of the automatic stay argument, *In re Silver,*[23] is a case wherein, postpetition, the IRS filed a tax lien. Here, there is no postpetition action or proceeding. All Defendant did was fund the loan.

The Court also finds it curious that Plaintiff (1) seemingly accepted the funding of the Direct Consolidation Loan postpetition (in other words, he did not seek rescission, discharge, or other relief of, or related to, the loan), (2) sought deferments postpetition and post-discharge, (3) sought forbearance on the Direct Consolidation Loan in 1998, and (4) made two payments toward his Direct Consolidation Loan *over four years after its execution.* It strikes this Court that the Plaintiff has received the benefit of the consolidation of his loans during and after his bankruptcy case all to the detriment of the Defendant. To permit a Debtor on the eve of filing, or immediately thereafter, to execute a loan, receive the benefit thereof and sit back quietly, and then pounce on the creditor *several years later* and receive a discharge of the debt is untenable.

### G. Conclusion

The only loan now in existence is the Direct Consolidation Loan. It is either: (1) a postpetition debt that is not subject to discharge under 11 U.S.C. § 727(b) or (2) a prepetition student loan debt that did not first become due more than 7 years before the date of the filing of the petition and not dischargeable under 11 U.S.C. § 523(a)(8)(A). Since the Plaintiff has waived his "undue hardship" argument, there are no other avenues for relief for this Debtor–Plaintiff. Thus, Defendant's Motion for Summary Judgment must be granted in its favor.

### IV. *Order*

IT IS THEREFORE ORDERED that the Motion for Summary Judgment is hereby GRANTED. Judgment shall enter in favor of the Defendant and against the Plaintiff finding that the student loan debt

---

**21.** As an aside, in light of the age and condition and legibility of the documents, this Court is unable to ascertain when the debt first came due from the documents presented to the Court. Arguably, as with most student loans, the date is some time after the signing of the loan documents and disbursement of the funds. If that is the case, the loan would not have first come due until some time postpetition.

**22.** 11 U.S.C. § 362(a)(6).

**23.** 303 B.R. 849 (10th Cir. BAP 2004)